CITY OF BARRE *v.* McFARLAND & BOYCE.

January Term, 1909.

Present:  ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed July 2, 1909.

*Municipal Corporations—Water System—Franchises to Private Individuals—Licenses—Rights Acquired—Transfer—Revocation—Curative Statutes—Effect.*

A permit given by the bailiffs of a village to construct and maintain in its streets a water system wherewith to supply its inhabitants with water is a license, carrying with it the possibility of an interest, and may become non-revocable and assignable, and pass with the transfer of the property.

No. 145, Acts 1896, amending the charter of the city of Barre, and requiring persons owning water pipes laid in the streets of that city, to file with its clerk a survey showing the location thereof, and prohibiting any person from thereafter laying any pipes within the city until the filing of such survey, is a legislative recognition of the right of individuals, on their complying with the conditions imposed, to maintain in the streets of the city water pipes that had theretofore been installed under a permit given by the bailiffs of the village of Barre and subsequently confirmed by a resolution of the council of the city of Barre, regardless of whether such permit or resolution was valid.

APPEAL IN CHANCERY.  Heard on the pleadings, master's report and exceptions thereto, at the March Term, 1908, Washington County, *Hall,* Chancellor.  Decree, *pro forma,* for the orator according to the prayer of its bill.  The opinion states the case.  See the preceding case.

*J. Ward Carver* and *John W. Gordon* for the orator.

*George W. Wing, John H. Senter* and *William A. Boyce* for the defendants.

Munson, J. This case was heard with *City of Barre* v. *Perry and Scribner,* 82 Vt. 301, 73 Alt. 574, and stands the same as that case in many respects; but a difference in some of the facts is made the basis of further claims, which require special consideration.

The original permit in this case is dated April 7, 1894, and was given by the bailiffs of the village of Barre to defendant McFarland, who was then the owner of the springs which supply defendants' system. After the permit was given, and before the work of installation was undertaken, defendant Boyce bought a half interest in the springs, and he has since been associated with McFarland in the entire business. The city of Barre was incorporated by No. 165, Acts of 1894, which took effect on the first Tuesday of March, 1895. The pipes of defendants' system were laid mainly in the seasons of 1894 and 1895, without other authority than the permit above mentioned. In February, 1896, the city council adopted a resolution which recited that the defendants were the owners of a water system constructed and continued under permission given by the bailiffs of the village, and that they desired to extend their works under the authority of the city; and which thereupon gave the defendants the right to lay, relay and repair their pipes, and have the same remain in any and all the streets of the city for the purpose of supplying the inhabitants with pure spring water. The defendant McFarland was then one of the aldermen, and the resolution was offered by him, but nothing appears regarding the vote. A considerable extension of the defendants' system was made subsequent to the passage of this resolution.

It is objected that the permit as introduced in evidence had been mutilated by erasures which left its original reading uncertain. The master finds that a portion of one line of the original permit is so obliterated that its exact reproduction is impossible, but nothing appears regarding the cause. It is apparent from the permit as reproduced in the report that the lost words were those designating something to be laid as the means of carrying the water through the streets, and that the inability to reproduce them is of no importance to the questions raised. It is also found that there are some pencil marks on the permit which were not on it when issued, but the report accounts for their presence, and the circumstances negative any improper purpose in making them.

It is insisted that the permit, if valid, was not transferable to defendant Boyce.  The effect claimed for this upon the case in hand is not stated, and need not be surmised.  It is clear that the privilege was not one given as a matter  of trust and confidence in the individual, and was one that depended for its exercise upon the development and control of property interests. It was not a mere license, but a license which carried with it the possibility of an interest; and such a license may become non-revocable and assignable, and pass with the transfer of the property.  28 Cyc. 748; Note 10 Am. Dec. 40; *Quinn* v. *Middlesex Electric Light Co.,* 140 Mass. 109, 3 N. E. 204; *Allen* v. *Fiske,* 42 Vt. 462; *Clark* v. *Glidden,* 60 Vt. 702, 15 Atl. 358.

It is said that if the village charter authorized the bailiffs to provide a water supply, it did not authorize them to permit the introduction of water for a special and limited purpose. This claim is so clearly disposed of by the views we entertain upon other points that a special consideration of it is unnecessary.

The orator's main contentions are that the authority to provide a supply of water rested with the village and not with the bailiffs; that the action of the bailiffs, if authorized, could not affect the rights of the city under its charter in the absence of a reservation in defendants' favor; and that the vote by which the city council undertook to confirm and extend the privileges claimed under the village permit was invalid.  The village charter provided that the village might make bylaws relating to a water supply, but no bylaw is shown conferring authority therein upon the bailiffs.  Stress is laid in this connection upon the terms of the permit, which are in substance that the bailiffs grant the permission so far as they have the right to do it.  The act incorporating the city of Barre cast upon it all the duties, liabilities, obligations and debts of the village of Barre.  If the defendants' expenditures imposed any obligation upon the village, this provision was doubtless sufficient to transfer that obligation to the city.  But it is said that the defendants must have understood from the permit that there was a doubt as to the authority of the bailiffs to give it, and that expenditures made under a permit that carried with it this knowledge cannot equitably be made the basis of a right.  It is said that no effect can be given to the action of the city council; that it is to be presumed that defendant McFarland voted for the resolution,

and that his participation made the vote invalid. Our view of other matters is such that it is not necessary to inquire as to this presumption, or the effect of McFarland's interest upon the validity of the resolution. After this vote the defendants proceeded with the extension of their system by laying both main and service pipes. Each addition of either class was made on a special authorization of the city council, as to the validity of which no question is made. Until shortly before the bringing of the bill, more than two years after the resolution was adopted, no question was raised as to the legality of the defendants' occupancy of the streets for the purpose stated in the resolution. In fact, no claim is made in this proceeding adverse to the continuance of the defendants' system as it existed when the bill was brought: the claim of invalidity is urged merely as a means of precluding its enlargement.

After the passage of the resolution in question, and after the defendants had continued their extensions under it and under the special authorizations above mentioned, and before any question had been raised as to the legality of their occupancy, the Legislature amended the orator's charter by No. 145, Acts of 1896, which provided that every person, company or corporation then owning and having water pipes in any street should.file with the city clerk a survey of the location thereof covering certain particulars, and which prohibited the laying of further pipes by any owner until such requirement was complied with. The defendants were clearly within the purview of this enactment, for they then had a system of pipes in the orator's streets, the later extensions of which had been made under special permits of the city council; and this provision was a legislative recognition of their occupancy of the streets. and of their right to continue it upon complying with the conditions imposed. The view we take of this legislation renders it unnecessary to inquire regarding the power of the village bailiffs, the effect of the orator's charter as originally enacted, or the validity of the resolution objected to. The matter is more fully stated, and the further questions raised are disposed of, in the opinion in the companion case above referred to.

*Pro forma decree reversed and cause remanded with mandate.*